IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JENNIFER LYNN STRUBE )
)
v. ) NO. 3:04-0538
)
THE CITY OF WHITE HOUSE, )
TENNESSEE, et al. )

## MEMORANDUM

Pursuant to 28 U.S.C. § 636(c), the parties in this action consented to have the Magistrate Judge conduct any and all proceedings in this action including the entry of final judgment. See Docket Entry Nos. 37 and 38.

### I. BACKGROUND

This action was filed on behalf of the plaintiff by her now deceased mother. The plaintiff, who was a minor at the time of filing, is now over the age of eighteen. She seeks compensatory and punitive damages asserting a claim under 42 U.S.C. § 1983 that her civil rights were violated and various state law claims. Several defendants were named in the original complaint, but only two defendants remain in the action.[1] The two defendants, Michael Henry and Matt Marshall, are both police officers with the City of White House Police Department.

---

[1] By order entered February 7, 2005 (Docket Entry No. 23), Pat Brady was terminated from the action. By an agreed order entered March 10, 2005 (Docket Entry No. 27), the City of White House Police Department was dismissed from the action. By a stipulation of dismissal filed May 1, 2006 (Docket Entry No. 44), the City of White House was dismissed from the action.

On the evening of June 21, 2003, the plaintiff was sixteen years old and was attending a party at a house on Shady Lane in White House, Tennessee. At approximately 9:30 that evening, police officer Michael Henry arrived at the house in response to a complaint about loud noise. Sargent Matt Marshall arrived shortly thereafter. Several people were standing outside the house in the garage area and it was apparent that alcohol was being served at the party. The officers suspected that drug use was also occurring in the house, and Officer Marshall left to obtain a search warrant. Other White House police officers soon arrived at the house to provide assistance. Officer Marshall returned with a search warrant at approximately 1:30 a.m. that morning and he and Officer Henry proceeded to search the house. Marijuana and other drug paraphernalia were discovered during the search and the owner of the house, Chris Hall, was arrested.

There were several attendees at the party who were not yet of drinking age. They were separated from the other party attendees and detained at the house while the officers were waiting for the search warrant and while the search was being conducted. At first, they were detained outside but were later moved to a room inside the house. This room was separated into two sections by a half-wall and one section contained a pool table. The detained individuals were interviewed and six of them were cited for underage drinking. Others were apparently released to their parents. The plaintiff, who was not cited for underage drinking, had tried unsuccessfully to contact her mother by telephone and remained in the house.

At some point during the evening after the house was searched, the plaintiff and another teenager who still remained at the house, Kari Edwards, began to argue and curse at each other. The plaintiff stood up during the argument and was told by Officer Henry to sit down, which in turn elicited more cursing from the plaintiff, this time directed at Henry. After the plaintiff failed to calm

2

herself and sit down, Henry grabbed her and physically moved her to the section of the room where the pool table was located.

The plaintiff alleges that she was then forcefully thrown on top of the pool table with at least one of her arms behind her back and that Henry slammed her head into the top of the pool table two times causing her chin to strike the top of the pool table. She alleges that Sergeant Marshall then joined Henry and her head was slammed into the pool table a third time. The plaintiff contends that she was then thrown to the floor and handcuffed. The plaintiff suffered an injury to her chin which was treated by emergency medical technicians who were called to the scene but received no other treatment for any injuries that evening. The plaintiff was cited for assault on a police officer and permitted to leave the premises. This charge was ultimately reduced to a charge of disorderly conduct to which the plaintiff pled guilty.

The plaintiff alleges that she has suffered continuing headaches and back pain stemming from the incident which have required several subsequent medical visits.

**II. THE MOTION FOR SUMMARY JUDGMENT, RESPONSE, AND REPLY**

The defendants contend that the facts of this action are basically undisputed and do not support the plaintiff's claim that excessive force was used against her in violation of either her constitutional rights or state law. They first note that the plaintiff herself does not have any memory of what occurred between the time that she began cursing at defendant Henry and when she woke up in bed sometime the next day. They then note that the witnesses who observed the incident all agree that the plaintiff was agitated and cursing at defendant Henry, was not obeying his commands

to calm down and be seated, and was physically resisting his attempts to control her by jerking her hands away from defendant Henry when he was attempting to grab her.

With respect to the plaintiff's claim that her constitutional rights were violated, the defendants make three specific legal arguments. First, they argue that the claims against them in their individual capacities should be dismissed because the plaintiff has no evidence showing that either defendant acted outside their official governmental capacity in their interactions with her. Second, they assert that only the Fourth Amendment is applicable to the plaintiff's excessive force claim and that her claims of Eighth and Fourteenth Amendment violations lack any legal basis and warrant dismissal. Finally, the defendants contend that they are entitled to qualified immunity from any damages on the plaintiff's Section 1983 claim.

With respect to the plaintiff's state law claims of assault and battery, the defendants argue that, as police officers, they are permitted to use that amount of force necessary to effect an arrest. They contend that the undisputed facts show that the force used against the plaintiff was within the bounds of necessary force. They further argue that the plaintiff consented to the use of force by her own actions and thus "brought the circumstances onto herself." See Docket Entry No. 47, at 23. Finally, they assert that the plaintiff was the aggressor on the evening in question and that they both acted in self-defense to protect themselves from the plaintiff's own attack on them.

The defendants assert that the plaintiff's other state law claims should be dismissed. They assert that they have immunity from the plaintiff's claim of negligent infliction of emotional distress under the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-205, and that this claim must be dismissed as a matter of law. With respect to the plaintiff's claims of malicious

4

prosecution and wrongful arrest, the defendants argue that these claims warrant dismissal given the fact that the plaintiff pled guilty to the charge of disorderly conduct.

The plaintiff responds by pointing out that the evidence before the Court shows that genuine issues of material fact exist concerning what happened on the night in question. The plaintiff concedes that her claims for Eighth and Fourteenth Amendment violations warrant dismissal, but contends that the disputed factual issues require that the defendants' assertion of qualified immunity and their motion for summary judgment be denied as to her Fourth Amendment excessive force claim. With respect to her state law claims, the plaintiff concedes that all state law claims except for her claims of assault and battery and negligent infliction of emotional distress are precluded by the provisions of Tenn. Code. Ann. § 29-20-205. The plaintiff asserts that the genuine issues of material fact which exist and warrant the denial of summary judgment with respect to her Fourth Amendment claims likewise warrant the denial of summary judgment with respect to her remaining two state law claims.

The defendants reply by first asserting that the plaintiff's response to their statement of undisputed material facts in support of their motion for summary judgment suffers from various technical deficiencies. Specifically, the plaintiff failed to comply with Rule 56.01 of the Local Rules of Court, which requires that a specific citation to the record be made by the plaintiff in support of her denial of any of the defendants' statements of fact and also requires her to make one of the three types of acceptable responses provided in Rule 56.01. The defendants request that ten statements[2]

---

[2] Statement Nos. 3, 5, 6, 9, 10, 11, 57, 96, 136, and 155.

of undisputed fact to which the plaintiff made a technically deficient response be deemed admitted and that certain other responses[3] be either corrected or not considered by the Court.

Additionally, the defendants dispute that the plaintiff's claim of negligent infliction of emotional distress can be legally maintained, that there is any evidence before the Court which would warrant that their assertion of qualified immunity be denied, and assert that the affidavit of Eric Cartee, which was submitted by the plaintiff in support of her response, be stricken.

### III. SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." In order to prevail on a motion for summary judgment, the moving party must demonstrate that no genuine issue of material fact exists and that judgment as a matter of law should be granted in the moving party's favor. Smith v. Hudson, 600 F.2d 60, 63 (6th Cir. 1979).

In considering a motion for summary judgment, the court must view all facts and inferences to be drawn therefrom in the light most favorable to the non-moving party. SEC v. Blavin, 760 F.2d 706 (6th Cir. 1985). The non-moving party, however, may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting its claims and establishing the existence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Cloverdale Equipment Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989).

---

[3] Response Nos. 9-15, 17-37, 95, 102, 103, 110-12, 122, 134, 139, and 140.

6

Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. Id. at 248. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

## IV. LEGAL CONCLUSIONS

A. Technical Arguments Made in the Defendants' Reply

Although it appears that the plaintiff's counsel either did not carefully read Local Rule 56.01(c) or chose not to comply with it, the Court will not grant the relief the defendants seek. This is not a case in which the plaintiff as the non-moving party has given short-shrift to gathering, analyzing, and bringing pertinent evidence before the Court or in which the plaintiff merely relies in her response in opposition upon a general denial of the defendants' statement of undisputed material facts. Instead, the plaintiff in her memorandum in opposition (Docket Entry No. 52) points out numerous factual disputes she has with the defendants' supporting evidence and supports her disputes with specific citations to the evidence before the Court.

7

Similarly, the Court does not find that the defendants have set forth any persuasive basis upon which to strike the affidavit of Eric Cartee. Although the Court has not relied on his affidavit, the Court declines to strike the affidavit.

B. Eighth Amendment Claim, Fourteenth Amendment Claim, and State Law Claims of Malicious Prosecution and Wrongful Arrest

The plaintiff concedes dismissal of these claims. See Plaintiff's Memorandum of Law (Docket Entry No. 52), at 1 and 6. Accordingly, summary judgment is granted to the defendants on these claims.

C. Negligent Infliction of Emotional Distress Claim

In Salle v. Barrett, 171 S.W.3d 822 (Tenn. 2005), the Tennessee Supreme Court recently determined that the Governmental Tort Liability Act, Tenn. Code. Ann. § 29-20-205(2), does not provide immunity to governmental entities for claims of negligent infliction of emotional distress and that, for such claims, the governmental entity was the proper party-defendant and individual employees of the governmental entity are immune from suit for such claims. Accordingly, the plaintiff's claim for negligent infliction of emotional distress against defendants Henry and Marshall warrant dismissal.[4]

---

[4] The plaintiff relies on Matthews v. Pickett, 136 F. Supp. 2d 861 (M.D. Tenn. 2000), for her assertion that the negligent infliction of emotional distress claim should proceed against defendants Henry and Marshall. Matthews, however, was decided prior to Sallee, which clarified the law in this area, and was itself later vacated by the Circuit Court of Appeals for the Sixth Circuit. See Matthews v. Pickett, 46 Fed. Appx. 261 (6th Cir. 2002).

8

D. Defense to Individual Capacity Claims

The defendants assert that all claims against them in their individual capacity should be dismissed because the plaintiff has no evidence upon which she can rely showing that either defendant acted outside his official governmental capacity as a deputized officer of the White House Police Department when he interacted with the plaintiff.

The Court first notes that the defendants are unclear as to which of the plaintiff's claims, the Section 1983 civil rights claim or the state law claims, their argument applies. Further, the defendants do not provide any case law in support of their argument.

The defendants' argument lacks merit. With respect to the plaintiff's Section 1983 civil rights claim, the capacity in which an individual is sued is an indication of whom the suit is brought against. A lawsuit against an defendant in his individual capacity indicates that the individual defendant is being personally sued while a lawsuit against an individual in his official capacity is the equivalent of a suit against the government entity for which the defendant works. See Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994).[5] "As the United States Supreme Court has stated, "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The plaintiff does not have to show that defendants Henry and Marshall acted out outside their official governmental capacity in their interaction with her in order to satisfy her individual capacity claim against them for the alleged violation of her civil rights. Indeed, for a

---

[5] The plaintiff's official capacity claims against defendants Henry and Marshall are essentially claims against their employer, the City of White House. By order entered March 10, 2005 (Docket Entry No. 27), the City of White House was dismissed from the action, and, by implication, the plaintiff's official capacity claims against defendants Henry and Marshall were dismissed.

9

claim brought under Section 1983, the plaintiff is required to show that the defendants were "state actors."

E. Fourth Amendment Excessive Force Claim

Defendants Henry and Marshall assert that they are entitled to qualified immunity from the plaintiff's claim for damages under Section 1983. The affirmative defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); Gardenhire v. Schubert, 205 F.3d 303, 310-11 (6th Cir. 2000).

The qualified immunity analysis requires a step-by-step inquiry. The Court must first determine whether a constitutional violation has occurred. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Sigley v. City of Parma Heights, 437 F.3d 527, 537 (6th Cir. 2006); Jackson v. Leighton, 168 F.3d 903, 909 (6th Cir. 1999). If the Court finds that no violation has occurred, then the case must be dismissed at this threshold stage. Saucier, 533 U.S. at 201. If the Court finds that a constitutional violation has occurred, the Court must then determine whether the constitutional right was clearly established at the time of the incident in question such that a reasonable officer in the position of the defendant would have known that his conduct violated that right. See Saucier, 533 U.S. at 201; Champion v. Outlook Nashville, Inc., 380 F.3d 893, 900-01 (6th Cir. 2004); Feathers v. Aey, 319 F.3d 843, 848 (6th Cir. 2003); Burchett v. Kiefer, 310 F.3d 937, 942-43 (6th Cir. 2002); Risbridger v. Connelly, 275 F.3d 565, 569 (6th Cir. 2002)

10

### 1. Did a violation of the plaintiff's Fourth Amendment rights occur?

The issue of qualified immunity has been brought before the Court in the posture of the defendants' motion for summary judgment. Accordingly, the Court's inquiry at this stage of the analysis is whether the facts before the Court, when viewed in the light most favorable to the plaintiff as the non-moving party, show that her Fourth Amendment right to be free from the use of excessive force was violated.

The Fourth Amendment to the Constitution guarantees that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ." Under the Fourth Amendment, individuals have a right to be free from excessive force when police make an arrest or seizure.[6] See Graham v. Connor, 490 U.S. 386, 394-95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); Lyons v. City of Xenia, 417 F.3d 565, 575 (6th Cir. 2005); Kostrzewa v. City of Troy, 247 F.3d 633, 638-39 (6th Cir. 2001).

The touchstone question is the reasonableness of the police officer's actions. The reasonableness inquiry is an objective one: were the officer's actions objectively reasonable in light of the facts and circumstances confronting the officer, without regard to the officer's underlying intent or motivation. Graham, 490 U.S. at 397. Determining reasonableness requires careful attention to the particular facts of each case because what is reasonable is not capable of universal definition. Bell v. Wolfish, 441 U.S. 520, 559 (1979). In Graham, the Supreme Court instructed reviewing courts to consider various factors in evaluating excessive force claims and noted that the proper application of the reasonableness inquiry "requires careful attention to the facts and

---

[6] The defendants do not contest that the detention of the plaintiff at the house for several hours on the night in question constituted a seizure for the purposes of the Fourth Amendment.

11

circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether she is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. These factors do not constitute an exhaustive list, however, and the ultimate question is whether the totality of the circumstances justifies a particular use of force. Id. As the Sixth Circuit in Lyons has stated:

> The question is whether the undisputed facts demonstrate that a hypothetical reasonable officer would have known that his actions, under the circumstances, were objectively unreasonable, not whether [the officer] used the least intrusive means available.

Lyons, 417 F.3d at 576 (internal quotations omitted) (citing Scott v. Clay County, 205 F.3d 867, 877 (6th Cir. 2000)).

Applying these principles to the circumstances of this case, the Court concludes that genuine questions of material fact exist regarding whether defendants Henry and Marshall acted reasonably during their seizure of the plaintiff. The plaintiff has presented sufficient evidence upon which a reasonable jury could find that excessive force was used against her in violation of her Fourth Amendment rights. The Court simply cannot find that the facts are so one sided in favor of the defendants that they are entitled to qualified immunity on the issue of whether a constitutional violation occurred. When resolution of the reasonableness determination for an excessive force claim requires belief of one parties' set of facts over another, the defendants are not entitled to summary judgment on the issue. See Sigley v. City of Parma Heights, 437 F.3d 527, 536 (6th Cir. 2006); Sova v. City of Mount Pleasant, 142 F.3d 898, 903 (6th Cir. 1998). Although the defendants suggest that the facts are essentially undisputed, the Court does not view them as such and finds that factual questions exist regarding issues which are critical in the analysis of whether a Fourth Amendment violation occurred.

12

First and foremost, a genuine and material factual question exists regarding exactly what force was used against the plaintiff by the defendants. Specifically, what occurred when the plaintiff was placed on the pool table by defendant Henry and then later when defendant Marshall came to assist Henry. The defendants suggest that the only force used against the plaintiff at this point was defendant Henry bending the plaintiff at the waist over the pool table and then struggling with her in order to get both of her hands behind her back, an act in which defendant Marshall was also involved. See Defendants' Memorandum in Support (Docket Entry No. 47), at 9. They further contend that during this time, the plaintiff was actively resisting arrest by kicking and trying to head butt defendant Henry.

In stark contrast, the plaintiff offers evidence that she was thrown face first on top of the pool table by defendant Henry such that her feet were no longer in contact with the ground and thereafter was lifted and thrown back onto the top of the pool table a second and third time, each time with her chin being slammed into the top of the pool table. See Deposition of Amanda DeForge (Docket Entry No. 49-3), at 72-81; Deposition of Kari Edwards (Docket Entry No. 49-9), at 70, 72-79. The plaintiff attributes any contact she may have had with the defendants during this time via her head or feet as a natural consequence of the rough and excessive actions of the defendants.

Although the defendants deny throwing the plaintiff on top of the pool table and slamming her chin or head into the top of the pool table, see Deposition of Henry (Docket Entry No. 49-7), at 28; Affidavit of Marshall (Docket Entry No. 49-10), at ¶ 13, nowhere in the defendants' memorandum in support or their reply (Docket Entry No. 58) do they address, or even acknowledge, the plaintiff's differing version of these facts nor do they analyze the plaintiff's Fourth Amendment

13

claim in light of her version of what occurred at the pool table. This omission is curious because the nature and amount of force used is a critical component to any analysis of a Fourth Amendment excessive force claim. Under the plaintiff's version of the facts, this case involves much more than a "push or shove . . . [which] . . . may later seem unnecessary in the peace of the judge's chambers." Graham, 490 U.S. at 396. The Court is left to wonder whether the defendants are contending that the plaintiff's chin was not slammed into the pool table as alleged, that her chin did strike the pool table but not as alleged, or that, even if her chin was slammed into the pool table as alleged, this was a reasonable use of force.

Another genuine and material factual question exists concerning what force was used against the plaintiff after the pool table incident. The defendants present evidence that, after the plaintiff was handcuffed and stood up, she attempted to kick and head butt defendant Henry but lost her balance and fell to the floor and was then helped up and taken to the garage area. See Deposition of Henry (Docket Entry No. 49-7), at 27-28; Affidavit of Marshall (Docket Entry No. 49-10), at ¶ 14. In contrast, the plaintiff offers evidence that, after the pool table incident, the plaintiff was physically thrown to the ground by the defendants with a tackling motion prior to being taken to the garage area. See Deposition of DeForge (Docket Entry No. 49-3), at 81-83.

Finally, a genuine issue of material fact exists about the plaintiff's behavior prior to her being physically forced onto the top of the pool table by defendant Henry. It is undisputed that the plaintiff was cursing at Kari Edwards and that she cursed at defendant Henry. It is likewise undisputed that she did not comply with defendant Henry's order to her to sit down. From this point forward, however, the parties offer versions of the events which are significantly different. The defendants offer evidence that the plaintiff then walked toward defendant Henry while cursing and

14

struck him in the center of his chest with her hand. See Deposition of Henry (Docket Entry No. 49-7), at 26, Attachments to Defendants' Motion. The defendants further offer evidence that the plaintiff, after being initially grabbed by defendant Henry, kicked at Henry and flailed about trying to get away. Id.; Affidavit of Marshall (Docket Entry No. 49-10), at ¶ 12.

Contrastingly, the plaintiff's evidence is that she did not walk toward defendant Henry, did not strike him in any manner, and did not kick or "flail about" while being taken to the pool table. See Deposition of Amanda DeForge (Docket Entry No. 49-3), at 65-72; Deposition of Edwards (Docket Entry No. 49-9), at 66-71 and 113-16.

When these factual disputes are viewed in the light most favorable to the plaintiff as is required for resolution of a motion for summary judgment, the Court finds that consideration of the factors noted by Graham indicate that potential questions of fact exist which weigh on the issue of the reasonableness of the use of force by the defendants. As to the first Graham factor, it is undisputed that at the time that the physical encounter between the plaintiff and the defendants began, she was not implicated in any type of severe crime or one involving violence. She was merely a minor who was being detained by the defendants. The Court finds that genuine questions of material fact exist about the immediacy or the level of a threat that the plaintiff posed to the safety of the officers or others and whether she was actively resisting arrest or attempting to evade arrest by flight. There are two starkly contrasting pictures of the plaintiff at the time of the incident in question. It is for the jury to decide which of these pictures is accurate. Even if there is some evidence of resistance by the plaintiff, it would be improper to determine whether the resistance justified the officers' actions because such a determination is for a jury in the first instance. Similarly, the fact that the plaintiff was cursing and yelling is relevant to whether the defendants'

15

actions were reasonable but is surely not determinative of the issue.[7] This is especially so given that the exact nature of the force used by the defendants is itself an unresolved factual issue.

Thus, under the totality of the circumstances, a reasonable jury could believe the evidence presented by the plaintiff and find that the force used against her exceeded that amount of force which was reasonable and necessary under the circumstances. See Phelps v. Coy, 286 F.3d 295 (6th Cir. 2002) (jury could find that a constitutional violation occurred based on plaintiff's allegations that officers tackled him, hit him, and slammed his head into the floor).[8]

### 2. Was the plaintiff's Fourth Amendment right clearly established?

The primary question at this stage of the qualified immunity analysis is "whether the constitutional right allegedly violated was defined at the appropriate level of specificity to be clearly established." Sigley, 437 F.3d at 537. "The contours of the right must be clear enough to put an officer on notice that the actions he is taking are unlawful." Id. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held

---

[7] On this point, the Court is somewhat puzzled by the plaintiff's declaration that "[p]laintiff's use of profanity toward Officer Henry, while possibly unnecessary and rude and adding to the increased tensions, is nonetheless protected speech under the First Amendment, did not constitute fighting words, and therefore should not have been acted upon." Docket Entry No. 52, at 7.
    Whether or not the plaintiff's cursing was protected speech under the First Amendment or constituted "fighting words," whatever the plaintiff means by that phrase, are not issues in this case. The fact that an individual curses at a police officer in response to his directives to her is certainly a relevant factor to the determination of the reasonableness of a use of force against her, as well as being a part of the totality of the circumstances confronting the officer in his decision to use force.

[8] The Court notes that, because other factual issues are sufficient to warrant denial of summary judgment on the issue of excessive force, it is not necessary to address other issues which appear to be relevant to the issue of the reasonableness of the defendants' actions such as the disparity between the plaintiff and the defendants in terms of their age, size, and gender.

16

unlawful, but it is to say that in light of the pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). A defendant may be on notice that his conduct violates established law even in the case of novel or previously unreported factual circumstances. Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); Ciminillo v. Streicher, 434 F.3d 461, 468 (6th Cir. 2006).

In resolving this question within the context of a summary judgment motion, the Court must view the disputed facts in favor the non-moving party. Id. As such, the right at issue is the plaintiff's right to not be thrown on top of a table, have her head slammed into the table top by police officers, and tackled to the ground in response to her cursing at them, refusing an order to sit down, and pulling her hands away while offering no other type of physical resistance or aggression and while not being suspected of committing any crime.

A person's right be free from the use of excessive force during the course of an arrest is a clearly established right that existed at the time of the incident in question. See Bass v. Robinson, 167 F.3d 1041, 1051 (6th Cir. 1999); Jackson v. Hoylman, 933 F.2d 401, 403 (6th Cir. 1991). Further, in a more particularized sense, it was clearly established by the time of the incident in question that police officers were not permitted to use gratuitous force against an individual whom they had seized when the individual was otherwise incapacitated or under the control of the officers. See Phelps, supra; Holmes v. City of Massillon, 78 F.3d 1041 (6th Cir. 1996); Adams v. Metiva, 31 F.3d 375 (6th Cir. 1994); McDowell v. Rogers, 863 F.3d 1302 (6th Cir. 1988). Under the facts of this case viewed in the light most favorable to the plaintiff, any reasonable officer in the defendants' position on the night in question and faced with the circumstances at issue would have known that grabbing the minor, female plaintiff and throwing her onto the top of the pool table, repeatedly

17

slamming her face into the top of the pool table, and then tackling her to the ground would have been unlawful.

The plaintiff has offered sufficient evidence upon which a reasonable jury could conclude that what the defendants allegedly did was objectively unreasonable in light of the clearly established constitutional right at issue. Accordingly, the defendants are not entitled to qualified immunity as raised in their motion for summary judgment.

F. Assault and Battery Claim

The same disputed genuine issues of material fact which warrant the denial of summary judgment on the issue of the plaintiff's Fourth Amendment claim also exist with respect to the plaintiff's assault and battery claim under state law. Whether or not the force used by the defendants was clearly excessive requires resolution of factual issues by the jury.

The Court is unpersuaded by the defendants' two defenses to the plaintiff's assault and battery claim and find that neither of these defenses is supported by the facts of this case or by any pertinent case law which has been presented to the Court by the defendants. The facts construed in the light most favorable to the plaintiff clearly do not support a finding as a matter of law that the plaintiff consented to the use of force of which she complains. Nor do the facts support a conclusion that the defendant police officers were acting in self-defense in their seizure of the plaintiff.

18

## CONCLUSION

Based on the foregoing, the defendants' motion for summary judgment (Docket Entry No. 46) will be DENIED in part and GRANTED in part.

An appropriate order will enter.

_____
JULIET GRIFFIN
United States Magistrate Judge